# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. 4:23-CR- |
| v. | § | 00103-ALM-AGD |
| | § | |
| CHRISTOPHER DAVID YOES | § | |

## REPORT AND RECOMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the court is Defendant Christopher David Yoes' Motion to Suppress ("Motion") (Dkt. #10). After considering the Motion (Dkt. #10), the Government's response (Dkt. #12), Defendant's reply and Supplemental Motion to Suppress (Dkt. #15), all other relevant filings, and the evidence and oral argument of counsel at the Hearing, the court recommends that Defendant's Motions (Dkts. #10, 15) be **DENIED**.

## BACKGROUND

*Procedural Background*

On May 10, 2023, Defendant was charged in a one-count indictment with a violation of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person (Dkt. #1). On August 21, 2023, Defendant filed his Motion to Suppress, seeking to suppress all evidence from the traffic stop on April 19, 2023 (Dkt. #10 at 1). On August 31, 2023, the Government filed its response to Defendant's Motion, arguing that Defendant's Motion should be denied because there was reasonable suspicion and probable cause to initiate the traffic stop on April 19, 2023 (Dkt. #12 at 2). On September 1, 2023, District Judge Amos Mazzant referred Defendant's Motion to the undersigned (Dkt. #14). On the same day, Defendant filed a reply and a supplement (noted on the court's docket sheet as a Supplemental Motion to Suppress) to his Motion (Dkt. #15). The court held a hearing on the Motion ("the Hearing") on October 19,

1

2023 (Dkt. #17). At the Hearing, Pilot Point Police Corporal Justin Hull ("Hull") and Krugerville Police Officer Jeff Pruett ("Pruett") testified on behalf of the Government, and Investigator Steve Vedral ("Vedral") testified for the defense. The court admitted the following exhibits:

>Government Exhibit 1: Pole camera video
>
>Defense Exhibit 1: Still image taken from pole camera video
>
>Defense Exhibit 2: Still image taken from pole camera video
>
>Defense Exhibit 3: Still image taken from pole camera video
>
>Defense Exhibit 4: Still image taken from pole camera video
>
>Defense Exhibit 5: Photo of rear of Home Depot truck
>
>Defense Exhibit 6: Photo of rear of Home Depot truck – left taillight
>
>Defense Exhibit 7: Photo of rear of Home Depot truck – right taillight

*Factual Background*

On April 19, 2023, Defendant was arrested following a high-speed chase. At the Hearing, Hull testified that he was on duty in Pilot Point, Texas at around 2 a.m. on April 19, 2023. Hull was sitting in an unmarked patrol car when he observed a Home Depot rental truck traveling at approximately 100 miles per hour with defective taillights. Hull was aware of perpetrators' recent use of rental trucks to commit crimes. He noted that the time of morning, along with Defendant's high rate of speed, may have indicated that the driver was under the influence. Hull pulled out behind the truck and activated the lights and sirens on his patrol car. Because the car was unmarked, the police department did not equip Hull's car with a dash camera. In response, the driver of the truck, which neither party disputes was Defendant, failed to yield and increased his speed. Hull pursued Defendant for nearly an hour from Pilot Point to Fort Worth. On the recording

of the conversation between Hull and police dispatch, Hull updated dispatch regarding Defendant's speed, with statements such as "speed 100" or "speed 90." While Pilot Point policy requires a body camera, Hull was not wearing a body camera on the morning of April 19, 2023. In Fort Worth, Defendant, while traveling northbound in a southbound lane, collided with another vehicle. A pole camera facing the intersection captured a video of the collision.

Pruett testified that he was on patrol the morning of April 19, 2023, when dispatch alerted him regarding a vehicle that had failed to yield. Dispatch alerted Pruett that Defendant was heading towards Pruett. Accordingly, Pruett activated his radar, which captured Defendant's speed at 96 miles per hour. Pruett then joined the pursuit of Defendant and was present when Defendant's truck collided with the other vehicle. After the collision, Pruett restrained Defendant, and in doing so, noticed an empty gun holster on Defendant's hip. The officers subsequently recovered a gun on the dashboard of the truck. The officers did not conduct field sobriety tests on Defendant or charge Defendant with driving under the influence. Pruett's patrol car was equipped with a dash camera.

Vedral, an investigator for the Federal Public Defender's Office, testified that he inspected trucks at Home Depot that were similar to the truck driven by Defendant. Vedral spoke to Home Depot employees but was not able to determine if Home Depot equips its rental trucks with speed governors.

**LEGAL STANDARD**

Traffic stops are considered seizures within the meaning of the Fourth Amendment. *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See*

*Knowles v. Iowa*, 525 U.S. 113, 117 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To determine whether a seizure is reasonable, the court considers (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506 (quoting *Terry*, 392 U.S. at 19–20).

When considering whether an officer's actions were justified at their inception, the Supreme Court has stated that the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *U.S. v. Arvivu*, 534 U.S. 266, 273 (2002) (quoting *Terry*, 392 U.S. at 30). The Supreme Court has specifically instructed that, when courts make reasonable suspicion determinations, they must look at the "totality of the circumstances" to see whether the officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id*. (quoting *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981)). The totality of the circumstances standard allows officers to draw on their own experience and specialized training to make inferences from cumulative information that might "well elude an untrained person." *Id*. (quoting *Cortez*, 449 U.S. at 418). An officer may not rely on a mere "hunch" to justify a stop. *Terry*, 392 U.S. at 27. However, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvivu*, 534 U.S. at 274.

The Fifth Circuit has applied the first prong of the *Terry* test to traffic stop situations. *U.S. v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010). For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *Id.* A reasonable suspicion exists when the officer can point to specific and articulable facts which,

4

taken together with rational inferences from those facts, reasonably warrant the seizure. *Id*. (citation omitted); *U.S. v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002).

## ANALYSIS

Having heard the evidence presented, the court finds that Hull had reasonable suspicion to initiate a traffic stop on April 19, 2023 due to Defendant's excessive speed. Hull testified that he first observed Defendant while Defendant was traveling at speeds significantly exceeding the speed limit. This testimony alone is sufficient to establish reasonable suspicion for Hull to initiate a traffic stop.[1] Hull's testimony is corroborated by the recording of Hull's communications with dispatch, Pruett's radar measuring Defendant's speed at 96 miles per hour, and the pole camera footage showing Defendant traveling at high speeds on the wrong side of the road before colliding with another vehicle. Defendant's speed is a "specific and articulable fact[]," which if taken together with rational inferences from that fact, "reasonably warrant[ed]" Hull's conduct on April 19, 2023. *See Banuelos-Romero*, 597 F.3d at 766. The officers did not violate Defendant's Fourth Amendment rights. Because the gun was found and seized as a result of a valid traffic stop, Defendant's Motion must be denied.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Defendant Christopher David Yoes' Motions to Suppress (Dkts. #10, 15) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific

---

[1] At the Hearing, Defendant repeatedly attempted to use Hull's report regarding the taillights on the truck to call the accuracy of Hull's testimony into question. Because the court finds that the Motion must be denied due to Defendant's speed, it does not reach any analysis regarding the truck's taillights.

5

finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of January, 2024.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE